IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.** **INFORMATION**

3:17cr19 MCR

**BRAD T. HODGSON**
_______________________________/

**THE UNITED STATES ATTORNEY CHARGES:**

**COUNT ONE**

**A. INTRODUCTION**

At all times material to this Information:

1. TRICARE was a federally funded medical benefits program provided by the federal government to help pay for civilian medical care rendered to uniformed services personnel and their dependents, retired uniformed services personnel and their dependents, and dependents of deceased uniformed services personnel.

2. TRICARE was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b) that affected commerce, as that term is used in Title 18, United States Code, Section 1347.

FILED IN OPEN COURT THIS 2/27/17
CLERK, U.S. DISTRICT COURT, NORTHERN DIST. FL.

3. TRICARE was a "Federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f), that affected commerce, and as that term is used in Title 42, United States Code, Section 1320a-7b(b).

4. TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician. Express Scripts, Inc. ("Express Scripts") in St. Louis, Missouri, administered TRICARE's prescription drug benefits.

5. TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies. If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts. Express Scripts would then adjudicate the claim and reimburse the pharmacy. Payment for the prescription was either mailed in the form of a check or electronically sent to the pharmacy or a third party designated by the pharmacy. To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable state and federal laws, specifically including those addressing fraud, waste, and abuse.

6. In general, "compounding" is a practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters

ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. Florida Statutes, Section 465.003(18) defines compounding as "combining, mixing, or altering the ingredients of one or more drugs or products to create another drug or product." The State of Florida regulates pharmacies located in the state. Compounded drugs are not required to be approved by the Food and Drug Administration ("FDA"). Therefore, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

7. Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction.

8. Burklow Pharmacy, Inc. ("Burklow Pharmacy") was a pharmacy registered in the State of Florida with a principal place of business in Pace, Florida. Burklow Pharmacy was originally incorporated in Florida in or about May 1997. Burklow Pharmacy had a national provider identification ("NPI") number. Burklow Pharmacy was a network pharmacy with TRICARE.

9. Physician Specialty Pharmacy, LLC ("Physician Specialty Pharmacy") was a pharmacy registered in the State of Florida with a principal place of business in Pensacola, Florida. Physician Specialty Pharmacy was

registered in the State of Florida as a limited liability company in or about May 2014. Physician Specialty Pharmacy was not a network pharmacy with TRICARE.

10. Jay Pharmacy of Jay Florida, Inc. ("Jay Pharmacy") was a pharmacy registered in the State of Florida with a principal place of business in Jay, Florida. Jay Pharmacy was originally incorporated in Florida in or about April 1968. Jay Pharmacy had an NPI number. Jay Pharmacy was a network pharmacy with TRICARE. In or about February 2015, Physician Specialty Pharmacy purchased Jay Pharmacy.

11. J.A.T. was a medical doctor licensed by the State of Georgia. Dr. J.A.T. was authorized by the Drug Enforcement Administration ("DEA") to prescribe controlled substances and was assigned DEA registration number ending in 0568. Dr. J.A.T. had medical practices in the State of Georgia. Dr. J.A.T. employed M.A.S. as a billing coordinator for his medical practices.

12. Between in or about December 2009, and on or about December 16, 2015, defendant **BRAD T. HODGSON** was employed by Dr. J.A.T. **HODGSON** did not have a DEA number and was not licensed to prescribe controlled or non-controlled substances.

13. Simply Surgical, Inc. ("Simply Surgical") was a corporation registered in the State of Georgia. M.S.B. was the chief executive officer, the chief

financial officer, and secretary of Simply Surgical. M.S.B. was a marketing representative for Physician Specialty Pharmacy.

## B. THE CHARGE

Between in or about January 2014, and on or about December 16, 2015, in the Northern District of Florida, and elsewhere, the defendant,

**BRAD T. HODGSON,**

did knowingly and willfully conspire, combine, confederate, and agree with other persons to commit offenses against the United States, namely:

1. to execute a scheme to defraud a health care benefit program and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

2. to devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and to cause wire communications to be transmitted in interstate commerce for the purpose of executing such scheme, in violation of Title 18, United States Code, Section 1343.

## C. MANNER AND MEANS

It was part of this conspiracy that:

1. In or about 2014, M.S.B. contacted defendant **BRAD T. HODGSON** at one of Dr. J.A.T.'s medical offices in reference to writing prescriptions for compounded pain cream, scar cream, and wellness capsules. That is, M.S.B. asked **HODGSON** if he would be willing to write prescriptions for compounded drugs for individuals whose names M.S.B. provided to **HODGSON**. As a part of the agreement, **HODGSON** would receive cash from M.S.B. for the prescriptions **HODGSON** wrote, processed, and submitted.

2. Thereafter, M.S.B. electronically provided defendant **BRAD T. HODGSON** with TRICARE and other health care benefit programs' beneficiaries' personal identifying information, identification cards, and insurance cards.

3. Defendant **BRAD T. HODGSON** then caused prescriptions purportedly signed by Dr. J.A.T. and bearing Dr. J.A.T.'s DEA registration number to be electronically submitted in interstate commerce via email and fax to pharmacies including, but not limited to, Physician Specialty Pharmacy. At the same time, **HODGSON** also submitted "Patient Face Sheets" with the health care beneficiaries' personal identifying information to the pharmacies. Dr. J.A.T. did not authorize or sign the prescriptions **HODGSON** submitted. Further, the health care beneficiaries were not patients of Dr. J.A.T. or any other health care provider

at Dr. J.A.T.'s medical practices. The prescriptions **HODGSON** submitted were not prescribed by an authorized health care provider and were not medically necessary. Thereafter, as per the agreement with M.S.B., **HODGSON** received cash from M.S.B. for the fraudulent prescriptions **HODGSON** submitted.

4. Following receipt of the prescriptions, employees of Physician Specialty Pharmacy manufactured compounded substances and then caused the substances to be shipped to the respective health care beneficiaries. Individuals associated with Physician Specialty Pharmacy then caused claims to be submitted to Express Scripts, on behalf of TRICARE and other health care benefit programs for the prescriptions. The claims were submitted using Dr. J.A.T.'s DEA number, and the NPI numbers of Dr. J.A.T, and Burklow Pharmacy or Jay Pharmacy.

5. During the course of the scheme, claims for approximately 352 prescriptions, for a total of approximately $4,368,979, were submitted to Express Scripts, on behalf of TRICARE, using Dr. J.A.T. and Burklow Pharmacy's NPI numbers. Further, claims for approximately 55 prescriptions, for a total of approximately $896,361, were submitted to Express Scripts, on behalf of TRICARE, using Dr. J.A.T. and Jay Pharmacy's NPI numbers.

6. Express Scripts, on behalf of TRICARE and other health care benefit programs, processed and adjudicated the claims for the prescriptions. Payments for the prescriptions were then either mailed in the form of a check or

electronically sent to the pharmacies' accounts and accounts of a designated third party business. Following receipt of the payments, Burklow Pharmacy transferred a portion of the money it received to Physician Specialty Pharmacy.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### A. INTRODUCTION

The allegations contained in sections A and C of Count One are incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between in or about January 2014, and on or about December 16, 2015, in the Northern District of Florida, and elsewhere, the defendant,

**BRAD T. HODGSON,**

did knowingly and willfully conspire, combine, confederate, and agree with other persons to commit offenses against the United States, that is, to knowingly and willfully solicit and receive remuneration, including a kickback and a bribe, directly and indirectly, overtly and covertly, in cash and in kind, from M.S.B. and others, in return for referring patients for an item or service, for which payment may be made in whole or in part under a Federal health care program, that is, TRICARE, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## C. OVERT ACTS

To effect the objects of this conspiracy, the defendant and other conspirators committed the following overt acts, among others:

1. On or about October 30, 2014, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for C.T. and others to Physician Specialty Pharmacy via fax.

2. On or about November 5, 2014, Physician Specialty Pharmacy caused TRICARE to be billed approximately $4,378.53 for a prescription in the name of C.T.

3. On or about November 8, 2014, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for A.E., T.E., D.D.S., D.R.S., J.H., and others to Physician Specialty Pharmacy via fax.

4. Between on or about November 12, 2014, and on or about November 24, 2014, Physician Specialty Pharmacy caused TRICARE to be billed approximately $79,369.26 for prescriptions in the name of A.E., T.E., D.D.S., D.R.S., and J.H.

5. On or about November 26, 2014, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for A.E., T.E., and others to Physician Specialty Pharmacy via fax.

6. On or about December 1, 2014, Physician Specialty Pharmacy caused TRICARE to be billed approximately $13,105.44 for prescriptions in the name of A.E. and T.E.

7. On or about December 5, 2014, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for J.P.A., C.G., R.G., T.M.M., and others to Physician Specialty Pharmacy via fax.

8. Between on or about December 8, 2014, and on or about December 19, 2014, Physician Specialty Pharmacy caused TRICARE to be billed approximately $93,619.27 for prescriptions in the name of J.P.A., C.G., R.G., and T.M.M.

9. On or about January 2, 2015, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for J.H. and others to Physician Specialty Pharmacy via fax.

10. On or about January 2, 2015, Physician Specialty Pharmacy caused TRICARE to be billed approximately $6,491.83 for prescriptions in the name of J.H.

11. On or about February 16, 2015, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for D.D.S., D.R.S., and others to Physician Specialty Pharmacy via fax.

12. On or about February 19, 2015, Physician Specialty Pharmacy caused TRICARE to be billed approximately $13,646.74 for prescriptions in the name of D.D.S. and D.R.S.

13. On or about March 13, 2015, H.E.P. sent an email to M.S.B. that stated "Attached is another Tricare. She is a nurse and filled out a third page to specify what she wants. Hope that's okay. Let me know." Attached to the email was J.M.L.'s United States Navy identification card, a "Patient Demographic and Insurance Form" for J.M.L., and an unsigned partially completed prescription.

14. On or about March 13, 2015, M.S.B. forwarded H.E.P.'s email with the attachments to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s email stated "Patient needs 480 pain, 240 scar and wellness. Patient info below. Please disregard the Rx sheet. Brad will write up another one. But the location of pain and scar is on that Rx form."

15. On or about March 16, 2015, H.E.P. sent an email to M.S.B. that stated "Let me know you got this." Attached to the email was K.C.M.'s United States Navy identification card, and a "Patient Demographic and Insurance Form" for K.C.M.

16. On or about March 16, 2015, M.S.B. forwarded H.E.P.'s email with the attachments to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s email stated "Patient needs 480 pain and 240 scar and wellness. Info attached."

17. On or about March 16, 2015, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for K.C.M. to Physician Specialty Pharmacy.

18. On or about March 17, 2015, D.T.F. sent an email to M.S.B. that stated "Demographic Sheet Attached." Attached to the email was a "Patient Demographic and Insurance Form" for D.M.A.

19. On or about March 17, 2015, M.S.B. forwarded D.T.F.'s email with the attachments to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s email stated "D.M.A. needs 480 pain, 240 scar and wellness. Patient info attached."

20. On or about March 18, 2015, D.T.F. sent an email to M.S.B. that stated "2 Demographic Sheets Attached." Attached to the email was "Patient Demographic and Insurance Form" for C.J.R. and W.N.M.

21. On or about March 19, 2015, M.S.B. forwarded D.T.F.'s email with the attachments to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s email stated "Both patients need 480 pain, 240 scar, and wellness. Patient info attached."

22. On or about March 20, 2015, D.T.F. sent an email to M.S.B. that stated "another patient demographic sheet." Attached to the email was "Patient Demographic and Insurance Form" for J.Y.P.

23. On or about March 23, 2015, M.S.B. forwarded D.T.F.'s email with the attachments to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s email

stated "Please send these in asap. Patient needs 480 pain, 240 scar, and wellness. Info attached."

24. On or about March 23, 2015, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for D.M.A., C.J.R., and J.Y.P. to Physician Specialty Pharmacy.

25. On or about March 26, 2015, T.B.T. sent an email to M.S.B. that stated "Here you go. Attached is all 3. Let me know if you need anything else." Attached to the email were "Patient Demographic and Insurance Forms" for S.T., T.A.T., and T.D.T.

26. On or about March 26, 2015, D.T.F. sent an email to M.S.B. that stated "Patient demographic sheet attached." Attached to the email was a "Patient Demographic and Insurance Form" for C.B.M.

27. On or about March 27, 2015, D.T.F sent an email to M.S.B. that stated "Here Is another Demographic Sheet." Attached to the email was "Patient Demographic and Insurance Form" for H.H.M.

28. On or about March 27, 2015, D.T.F sent an email to M.S.B. that stated "Should be a strong Month." Attached to the email was "Patient Demographic and Insurance Form" for T.M.B.

29. On or about March 30, 2015, M.S.B. forwarded T.B.T.'s email with the attachments to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s email

stated "Tige and Staci need 480 pain, 240 scar and wellness. Baby Taylor needs 240 scar. Brad – can a baby (7 months) get wellness capsules? If so, prescribe those as well. All info is below. Pain is consistent with location of scar."

30. On or about March 30, 2015, M.S.B. forwarded D.T.F.'s emails with the attachments to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s emails stated that each patient needed "480 pain, 240 scar, and wellness."

31. On or about April 1, 2015, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted prescriptions and "Patient Face Sheets" for C.B.M., T.M.B., and H.H.M. to Physician Specialty Pharmacy.

32. Between on or about April 2, 2015, and on or about April 15, 2015, Physician Specialty Pharmacy caused TRICARE to be billed approximately $191,428.28 for prescriptions in the name of K.C.M., D.M.A., C.J.R., J.Y.P., C.B.M., T.M.B., and H.H.M.

33. On or about April 6, 2015, N.D.T. sent an email to M.S.B. that stated "Here you go Scott. Thanks for the info today. Talk to you soon." Attached to the email was a "Patient Demographic and Insurance Form" for N.D.T.

34. On or about April 6, 2015, M.S.B. forwarded N.D.T.'s email with the attachment to defendant **BRAD T. HODGSON** and M.A.S. M.S.B.'s email stated "Patient info is attached."

35. On or about April 8, 2015, defendant **BRAD T. HODGSON** transmitted or caused to be transmitted a "Patient Face Sheet" for N.D.T. and prescriptions to Physician Specialty Pharmacy.

36. On or about May 1, 2015, Physician Specialty Pharmacy caused TRICARE to be billed approximately $7,463.95 for prescriptions in the name of N.D.T.

37. On or about November 21, 2015, defendant **BRAD T. HODGSON** sent an email to M.S.B. with a letter attached that was purportedly signed by Dr. J.A.T. That is, **HODGSON** had forged Dr. J.A.T.'s signature. The letter falsely stated that Dr. J.A.T. had written and issued compounded prescriptions filled by Burklow Pharmacy and billed to TRICARE. Further, the letter falsely stated that Dr. J.A.T. had personally met with each of the patients.

All in violation of Title 18, United States Code, Section 371.

**COUNT THREE**

Between in or about January 2014, and on or about December 16, 2015, in the Northern District of Florida, and elsewhere, the defendant,

**BRAD T. HODGSON,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, the name of Dr. J.A.T. and Dr. J.A.T.'s government issued identification number, that is, a DEA registration number that

authorized Dr. J.A.T. to prescribe controlled substances in Schedules II through V, during and in relation to a felony violation enumerated in Title 18, United States Code, Sections 1028A(c)(4) and 1028A(c)(5), namely, false statements relating to health care matters, in violation of Title 18, United States Code, Section 1035, wire fraud, in violation of Title 18, United States Code, Section 1343, and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 as charged in Count One.

In violation of Title 18, United States Code, Section 1028A(a)(1).

**CRIMINAL FORFEITURE**

The allegations contained in Counts One and Two of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures to the United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(7). Upon the conviction of the violations alleged in Counts One and Two of this Information, the defendant,

**BRAD T. HODGSON,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any and all of the defendant's right, title, and interest in any property, real and personal, constituting, and derived from, gross proceeds traceable to such offenses.

If any of the property described above as being subject to forfeiture pursuant to Counts One and Two of the Information, as a result of any act or omission of any defendant:

i. cannot be located upon the exercise of due diligence;

ii. has been transferred or sold to, or deposited with, a third person;

iii. has been placed beyond the jurisdiction of this Court;

iv. has been substantially diminished in value; or

v. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the property subject to forfeiture under the provisions of Title 21, United States Code, Section 853(p), which is incorporated by reference in Title 18, United States Code, Section 982.

| | |
|---|---|
| CHRISTOPHER P. CANOVA<br>United States Attorney | 2/2/17<br>DATE |
| TIFFANY H. EGGERS<br>Assistant United States Attorney | 2/2/17<br>DATE |
| for J. RYAN LOVE<br>Assistant United States Attorney | 2-2-17<br>DATE |